IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| KEITH JARRED FLYNN, | ) |
| | ) |
| PLAINTIFF, | ) No. 2:14-cv-00060 |
| | ) Judge Sharp/Bryant |
| v. | ) |
| | ) |
| DUSTIN HENSLEY, *et. al.*, | ) |
| | ) |
| DEFENDANTS. | ) |

**To:** The Honorable Chief Judge Kevin H. Sharp, United States District Judge

### REPORT AND RECOMMENDATION

For the reasons stated below, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 27) be **GRANTED** and that all other pending Motions be **TERMINATED** as moot (Docket Entry 18, 20, and 30). The Magistrate Judge finds an absence of evidence to show that there is any genuine dispute of material fact for trial. Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** with prejudice.

### I.  Statement of the Case

Plaintiff, proceeding *pro se* and *in forma pauperis*, filed his Complaint against Defendants on June 20, 2014, alleging violation of his civil rights. (Docket Entry 1). On July 09, 2014, the District Judge referred this case to the Magistrate Judge. (Docket Entry 3). This action stems from an incident on or about June 20, 2013 when Defendant Hensley allegedly pulled over the vehicle in which Plaintiff was traveling as a passenger for failure to dim the bright lights, a broken light, and expired tags. (Docket Entry 1, p. 5). Defendant Hensley asked Plaintiff if he had any "weapons, drugs, or paraphernalia." (Docket Entry 1, p. 5). Plaintiff alleges that he

handed over "two machetes" and also informed Defendant Hensley that the minor driver had left his learner's permit at his residence. (Docket Entry 1, p. 5). Therefore, Defendant Hensley allegedly asked Plaintiff to get out of the vehicle in order to drive. (Docket Entry 1, p. 5). Once out of the vehicle, Defendant Hensley allegedly asked Plaintiff whether he had any other weapons. (Docket Entry 1, p. 5). Plaintiff reported that he had a pocketknife and, "[a]fter some hesitation," complied with Defendant Hensley's request to place the knife on the hood of the patrol car. (Docket Entry 1, p. 5). Then, Defendant Hensley allegedly ordered Plaintiff to get on the ground and "began to taser and verbally assault [Plaintiff]." (Docket Entry 1, p. 5). Plaintiff was allegedly handcuffed, arrested, and placed in the back of the patrol car while "[t]he officers on the scene, [Defendants Hensley, Ashburn, and Mulliken], searched the juvenile and [Plaintiff's] vehicle." (Docket Entry 1, p. 5). Plaintiff was allegedly charged with "disorderly conduct, resisting arrest, simple possession of methamphetamine, simple possession of marijuana, unlawful possession of a weapon, and possession [of] drug paraphernalia" and incarcerated for six hours. (Docket Entry 1, pp. 5-6).

On November 25, 2014, Plaintiff filed a Motion for Protective Order, arguing that Defendant's requests for admissions and interrogatories were meant to intimidate and coerce him. (Docket Entry 18). On the same date, Plaintiff filed a Motion for Extension of Time, requesting time to file a "Motion of Discovery" and to seek representation. (Docket Entry 20).

On December 30, 2014, Defendant filed a Motion for Summary Judgment, a Statement of Undisputed Facts, and a Memorandum of Law. (Docket Entry 27-29). On April 15, 2015, Defendants also filed a Motion to Dismiss. (Docket Entry 30). Plaintiff has not responded to the Motion for Summary Judgment or filed a motion for extension of time to do so. The time to respond has now passed. (Docket Entry 15). Therefore, the matter is properly before the Court.

## II. Standard of Review

Pursuant to FED. R. CIV. P. 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is material if it "might affect the outcome of the suit . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court must "decide 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Burgess v. Fischer*, 735 F.3d 462, 471 (6th Cir. 2013) (quoting *Anderson,* 477 U.S. at 251–52).

"The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case." *Adams v. Rockafellow,* 66 F. App'x 584, 585 (6th Cir. 2003) (unpublished opinion) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment." *Adams,* 66 F. App'x at 585 (citation omitted). "[T]he inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd., v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

If the nonmoving party fails to meet its burden, the Court may rely on the facts advanced by the moving party. *See Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 405 (6th Cir. 1992). However, the Court may not grant a motion for summary judgment simply because a nonmoving party fails to respond. *See Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419

(6th Cir. 2005) (unpublished opinion). Instead, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller,* 141 F. App'x at 419 (citation omitted).

When a plaintiff is *pro se*, the Court will review the plaintiff's pleadings under "less stringent standards than formal pleadings drafted by lawyers . . . ." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Still, "even *pro se* complaints must satisfy basic pleading requirements." *Dallas v. Holmes*, 137 F. App'x 746, 750 (6th Cir. 2005) (unpublished opinion) (citation omitted).

### III. Summary of Allegations

Plaintiff claims that Defendants conspired to violate his constitutional rights through an illegal search, excessive force, wrongful arrest, detainment without being informed of the grounds for arrest, and denial of personal property. (Docket Entry 1). Liberally construing Plaintiff's Complaint, the Magistrate Judge finds that Plaintiff brings these claims pursuant to 42 U.S.C. §§ 1983 and 1985. The Court previously dismissed the claims against Cumberland County Sheriff's Department as duplicative, leaving the following Defendants: **Cumberland County**; **Defendant Hensley**, arresting police officer with Cumberland County Sherriff's Department; **Defendant Ashburn** and **Defendant Mulliken**, police officers with Cumberland County Sherriff's Department; **Defendant Lanzilotta**, supervising officer with Cumberland County Sherriff's Department; and **Defendant Burgess**, Sheriff of Cumberland County. (Docket Entry 1, pp. 4, 8; Docket Entry 3, p. 2; Docket Entry 29, p. 7).

### IV. Analysis

A plaintiff who brings a § 1983 claim "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988)

(citation omitted). A plaintiff who brings a § 1985 claim "must allege both a conspiracy and some class-based discriminatory animus behind the conspirators' action." *Newell v. Brown,* 981 F.2d 880, 886 (6th Cir. 1992)(citation and internal quotation omitted). Where the Court is able to determine that there was no constitutional violation on the facts alleged, the Court need not delve into the affirmative defense of qualified immunity.

Plaintiff brings this action against Defendants in their personal and official capacities. (Docket Entry 1, p. 4). In a personal capacity claim, "it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citation omitted). When a plaintiff brings a § 1983 personal capacity claim against a defendant who had a supervisory role, "respondeat superior" will not "impute liability" onto such a defendant unless the plaintiff shows that the defendant encouraged or participated in the misconduct. *Sarr v. Martin*, 53 F. App'x 760, 761 (6th Cir. 2002) (unpublished opinion) (citation and internal quotation omitted).

An official capacity claim, on the other hand, is "only another way of pleading an action against an entity of which an officer is an agent." *Kentucky,* 473 U.S. at 165 (citation and internal quotation omitted). In other words, "the real party in interest is the entity." *Kentucky,* 473 U.S. at 166. Therefore, naming a county as a defendant and naming officers who are agents of the county is "duplicative." *Ramos-Macario v. Jones*, No. 3:10-00813, 2011 WL 831678, at *9 (M.D. Tenn. Mar. 2, 2011). However, where the entity is properly named, its " 'policy or custom' must have played a part in the violation of federal law." *Kentucky*, 473 U.S. at 166 (citation omitted). Again, "respondeat superior" does not generally apply. *Connick v. Thompson,* 131 S. Ct. 1350, 1359 (2011) (citation omitted). Still, "[i]n limited circumstances, a local government's decision not to train certain employees . . . may rise to the level of an official

government policy for purposes of § 1983." *Connick*, 131 S. Ct. at 1359. To that end, a plaintiff must show "deliberate indifference" on the part of the official. *Connick*, 131 S. Ct. at 1360.

Here, since Defendants Hensely, Ashburn, Muliken, Lanzilotta, and Burgess are all agents of Cumberland County, the official capacity claims against them are duplicative and should be **DISMISSED**. This leaves the official policy claim against Cumberland County and the personal capacity claims against the Defendants. As explained below, the Magistrate Judge finds a lack of any genuinely disputed material fact regarding these claims and recommends that these claims be **DISMISSED** with prejudice.

### A. Personal Capacity Claims

Throughout his Complaint, Plaintiff alleges that Defendants acted collectively. (Docket Entry 1). However, "[e]ach defendant's liability is assessed individually, according to his own actions." *Gordon v. Louisville/Jefferson Cnty. Metro Gov't,* 486 F. App'x 534, 541 (6th Cir. 2012)(unpublished opinion)(citation omitted). Although Defendants bear the burden of establishing an absence of evidence to support the Motion for Summary Judgment, "the rule that a plaintiff bears the burden of establishing individual officer liability in § 1983 claims . . . [remains] well established in our Circuit." *Gordon,* 486 F. App'x at 541(citation omitted). "Plaintiffs must provide something more than conclusory allegations of officers' collective responsibility for their claims to survive a summary judgment motion." *Gordon v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:08-CV-00029, 2011 WL 777939, at *3 (W.D. Ky. Feb. 28, 2011) *aff'd sub nom. Gordon v. Louisville/Jefferson Cnty. Metro Gov't*, 486 F. App'x 534 (6th Cir. 2012)(citation omitted).

Here, as to Defendants Ashburn and Mulliken, Plaintiff mentions them a handful of times in his Complaint. (Docket Entry 1). In each instance, Plaintiff alleges that these Defendants acted

along with Defendant Hensley. (Docket Entry 1). Plaintiff alleges that Defendants Hensley, Ashburn, and Mulliken searched Plaintiff's vehicle. (Docket Entry 1, pp. 5, 9). Plaintiff alleges that these Defendants "abus[ed]" and arrested him without stating the grounds for the arrest. (Docket Entry 1, p. 6). Plaintiff also alleges that Defendants Hensley, Ashburn and Mulliken had no evidence by which to arrest him and maliciously charged him. (Docket Entry 1, p. 9). Finally, Plaintiff alleges that Defendants Hensley, Ashburn *or* Mulliken deprived Plaintiff of his machetes and pocketknife. (Docket Entry 1, p. 10).

However, Plaintiff provides no facts from which the Magistrate Judge can infer that either Defendant Ashburn or Defendant Mulliken were individually responsible for the alleged actions. Further, the undisputed reports of the underlying incident that Defendants submit with the Motion for Summary Judgment are all signed by Defendant Hensley, without any mention therein of Defendants Ashburn and Mulliken. (Docket Entry 29-1, 29-2, 29-3, 29-4, 29-5). The Magistrate Judge is left with conclusory allegations and no evidence to indicate that Defendant Ashburn or Mulliken were responsible for the alleged actions. The undisputed reports also show that Plaintiff was arrested, at least in part, for "disorderly conduct" and possession of various drugs and weapons. (Docket Entry 29-1, 29-2, 29-3, 29-4, 29-5).

Plaintiff also mentions Defendants Burgess and Lanzilotta a handful of times in his Complaint. (Docket Entry 1). Plaintiff alleges that Defendants Burgess and Lanzilotta "should have had knowledge that the wrongs conspired to be done, as heretofore alleged, were about to be committed" and that these Defendants "had [the] power to prevent or aid in preventing the commission of said wrongs . . . ." (Docket Entry 1, p. 7). Plaintiff's allegations against Defendants Burgess and Lanzilotta amount to supervisory claims. In other words, Plaintiff

alleges that these Defendants are responsible for the alleged acts of Defendants Hensley, Ashburn and Mulliken because those Defendants are subordinate officers. (Docket Entry 1).

However, as explained above, the doctrine of respondeat superior does not apply outright in a personal capacity claim. Moreover, Plaintiff fails to show that Defendants Burgess and Lanzilotta encouraged any of the Defendants to search Plaintiff's vehicle, use a taser, or attempt to deprive Plaintiff of his rights. The Magistrate Judge cannot find anything in the record on which to infer that Defendant Burgess and Lanzilotta encouraged the violation of Plaintiff's rights. To the extent that Plaintiff alleges a failure to act on the part of either supervisory Defendant, this is likewise an insufficient basis for liability. *See Hays v. Jefferson Cnty., Ky.,* 668 F.2d 869, 873-74 (6th Cir. 1982).

Therefore, based on these undisputed facts, the Magistrate Judge finds that Defendants establish a lack of any genuinely disputed material fact regarding the personal involvement of Defendants Ashburn, Mulliken, Burgess and Lanzilotta.

As to Defendant Hensley, the Magistrate Judge finds that the claims against him should be dismissed as well. First, it is well established that "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Arizona v. Johnson,* 555 U.S. 323, 333 (2009). Here, Plaintiff concedes that the vehicle in which he was a passenger was stopped for various traffic violations. (Docket Entry 1, p. 5). Although the stop was not predicated on weapons or drug suspicion, Defendant Hensley could "see in plain view two extremely large fixed blade knives with the blade exceeding well over four inches in length, sitting . . . next to the passenger [Plaintiff]." (Docket Entry 29-5). The undisputed facts show that Defendant Hensley proceeded to ask about other "weapons, drugs, or paraphernalia." (Docket Entry 1, p. 5; Docket Entry 28, p. 1). "An officer's inquiries into matters unrelated to the justification for the

traffic stop, this Court has made plain, do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." *Arizona,* 555 U.S. at 333(citation omitted). Moreover, "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop." *Maryland v. Wilson*, 519 U.S. 408, 415 (1997). Here, the Magistrate Judge finds that Defendant Hensley's questioning and his order for Plaintiff to get out of the vehicle were lawful.

Next, the undisputed facts show that Plaintiff reported that he had at least one, and possibly two, pocket knives. (Docket Entry 28, p. 1; Docket Entry 29-1). However, Plaintiff only placed one pocket knife on the hood of Defendant Hensley's patrol car and "refused to place the other object, said to be a second pocket knife, on the car." (Docket Entry 28, p. 2). It is well settled that "to proceed from a stop to a frisk, the police officer must reasonably suspect that the person stopped is armed and dangerous." *Arizona ,* 555 U.S. at 326-27. The Magistrate Judge finds that Plaintiff's refusal would have caused reasonable suspicion that Plaintiff was still armed. Therefore, Defendant Hensley "instructed Plaintiff to get on the ground" and advised Plaintiff that he would "utilize a taser if Plaintiff did not comply." (Docket Entry 28, p. 2).

Plaintiff did not comply and Defendant Hensley "deployed the taser, giving [Plaintiff] a five second burst, which caused Plaintiff to go to the ground." (Docket Entry 28, p. 2). When Plaintiff refused to put his hands behind his back, Defendant Hensley tasered Plaintiff again and completed the arrest. (Docket Entry 28, p. 2). "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office,* 695 F.3d 505, 509 (6th Cir. 2012). Here, Plaintiff actively resisted getting on the ground and actively refused to be handcuffed. Therefore, Defendant Hensley's use of the taser on Plaintiff was lawful.

Therefore, based on these undisputed facts, the Magistrate Judge finds no genuinely disputed material fact as to the lawfulness of the search or the lawfulness of Plaintiff's arrest and no genuine dispute that Defendant Hensley used appropriate force. The undisputed facts also show no dispute as to whether Plaintiff was informed of the valid grounds for his arrest.

Finally, the undisputed facts show no dispute about Plaintiff's deprivation of property, namely his machetes and pocket knife. Although he alleges that he had to make "numerous inconvenient trips" to retrieve these items, these items were seized during a lawful search, as explained above. The Fourth Amendment does not apply to such circumstances and Plaintiff does not state a procedural due process claim because he concedes that he retrieved his property. *Fox v. Van Oosterum*, 176 F.3d 342, 348-51 (6th Cir. 1999).

The Magistrate Judge also finds that Plaintiff's claims pursuant to § 1985 should be dismissed because Plaintiff fails to plead more than conclusory allegations without any factual basis. Plaintiff also fails to mention any "class-based discriminatory animus behind the [alleged] conspirators' action," as required to state a claim under § 1985 and, even liberally construing Plaintiff's claims, the Magistrate Judge cannot infer that there was any such animus.

### B. Official Capacity Claims

Here, Plaintiff alleges that "pursuant to official policy . . . County of Cumberland knowingly, recklessly, or with deliberate indifference and callous disregard of [Plaintiff's] rights, failed to instruct, supervise, control and discipline . . . [Defendant] Hensley in his duties . . . ." (Docket Entry 1, p. 7). He alleges that the "County of Cumberland had knowledge of, or, had they diligently exercised their duties to instruct, supervise, control, and discipline on a continuing basis, should have had knowledge that the wrongs conspired to be done . . . were about to be committed." (Docket Entry 1, p. 7). Finally, he alleges that the "County of Cumberland  . . .

approved or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of [Defendant] Hensley . . . ." (Docket Entry 1, pp. 7-8).

First, Plaintiff's official capacity claim against Cumberland County must fail. It is well settled that "[a] plaintiff bringing a § 1983 claim against a municipality must . . . identify the policy or custom that caused [his] injury . . . ." *Ford v. Cnty. of Grand Traverse,* 535 F.3d 483, 495 (6th Cir. 2008). A plaintiff must also "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Ford,* 535 F.3d at 497. Plaintiff does neither. Although Plaintiff uses the words, "official policy," he does not identify any policy at issue. Nor does Plaintiff identify "a widespread practice . . . so permanent and well settled as to constitute a 'custom or usage' with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (citation and internal quotation omitted). As Defendants argue, Plaintiff presents "no evidence or implication that the official policy of Cumberland County is to violate the constitutional rights of motorists during traffic stops." (Docket Entry 29, p. 5). Even liberally construing Plaintiff's Complaint, the Magistrate Judge cannot infer that there is such a policy.

Plaintiff also fails to show "deliberate indifference" on the part of Cumberland County. Again, Plaintiff invokes the words "deliberate indifference" but does no more. It is well settled that "deliberate indifference" is a "stringent standard . . . ." *Ford*, 535 F.3d at 498. It "typically requires proof that the municipality was aware of prior unconstitutional actions by its employees and failed to take corrective measures." *Miller v. Calhoun Cnty.,* 408 F.3d 803, 815 (6th Cir. 2005)(citation omitted). Even if the Magistrate Judge were persuaded that an unconstitutional action had occurred here, which he is not, Plaintiff does not plead that Cumberland County was aware of any prior unconstitutional actions, its knowledge and disregard of which would amount to deliberate indifference.

Even liberally construing the record in Plaintiff's favor, the Magistrate Judge cannot find that Plaintiff presents or points to anything in the record that creates a genuine issue of fact. Therefore, the Magistrate Judge finds that Defendants show a lack of any genuinely disputed material fact regarding an unconstitutional policy or custom of Cumberland County.

## V. Recommendation

For the reasons stated above, the Magistrate Judge **RECOMMENDS** that Defendants' Motion for Summary Judgment (Docket Entry 27) be **GRANTED** and that all other pending Motions be **TERMINATED** as moot (Docket Entry 18, 20, and 30). The Magistrate Judge finds an absence of evidence to show that there is any genuine dispute of material fact for trial. Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED** with prejudice.

Under FED. R. CIV. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*, 474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

**ENTERED** this 12th day of August, 2015

s/John S. Bryant_____
John S. Bryant
U.S. Magistrate Judge
